618 S.E.2d 437

**Paul F. REESE, Robert W. Devaul, Anthony Marascio, Jr., James Markle, and Carl Antolini, Jr., Petitioners Below, Appellants,**

v.

**WEST VIRGINIA DEPARTMENT OF TRANSPORTATION, DIVISION OF HIGHWAYS, and West Virginia Department of Administration, Division of Personnel, Respondents Below, Appellees.**

**No. 31969.**

Supreme Court of Appeals of West Virginia.

Submitted: May 24, 2005.

Filed: July 7, 2005.

---

6. According to the circuit court's order, the LaMasters took physical possession of the tracts in

2002.

Michael W. Carey, Esq., Carey, Scott & Douglas, PLLC, Charleston, for Appellants.

Darrell V. McGraw, Jr., Attorney General, Barbara H. Allen, Managing Deputy Attorney General, Charleston, for Appellees.

The Opinion was delivered PER CURIAM.

PER CURIAM.

The appellants are Paul F. Reese, Robert W. DeVaul, Anthony Marascio, Jr., James Markle, and Carl Antolini, Jr. The appellees are the West Virginia Department of Transportation, Division of Highways ("DOH") and the West Virginia Department of Administration, Division of Personnel ("DOP").

In August of 2001, the DOH demoted the appellants and reduced their rate of pay. The appellants grieved these adverse employment actions in accordance with the "Grievance Procedure for State Employees" set forth at *W.Va.Code*, 29–6A–1 to 29–6A–12 [1998]. The West Virginia Education and State Employees Grievance Board ("Grievance Board") found that the appellees' actions were not contrary to law, rule, or policy.

The appellants then appealed the Grievance Board's decision to the Circuit Court of Wood County. The circuit court affirmed the Grievance Board's decision. The appellants contend that the circuit court erred in affirming the Grievance Board's decision.

We affirm the circuit court's order in part and reverse the order in part.

## I.

In October of 1998, the Division of Highways reorganized its ten districts. Four of the appellants, Paul Reese, Robert DeVaul, James Markle, and Carl Antolini, were promoted to newly created classifications of Highway District Administrator ("HDA") and Highway District Assistant Administrator ("ADA"), and received pay raises.[1] The

---

1. Markle, Antolini, and Marascio have apparently retired from the DOH. The record before this Court is unclear as to what relief, if any, these appellants would be entitled to under our decision in the instant case. That is a matter for the circuit court to address upon remand.

appellant Anthony Marascio was first hired by the DOH in October of 1998—as an ADA.

Subsequently, in February of 2001, the DOH announced its intention to implement a second reorganization; simultaneously, the DOH submitted its plans to the DOP for approval. The DOH sent a memorandum to each district explaining the DOH's reorganization plan, which included eliminating the HDA and ADA classifications. Throughout the winter and spring of 2001, the DOH continued to communicate to the appellants the DOH's intention to reorganize at the district level to eliminate the appellants' classifications.

In May of 2001, the DOP granted final approval to the DOH's reorganization plan. In August of 2001, all of the appellants were demoted. Appellants Reese, Marascio, and Markle were demoted into positions that were new for them, with lower pay grades. Appellant DeVaul was demoted to a previously-held position with a lower pay grade classification. The DOH reduced the appellants' salaries to the mid-range of the salary scale for their new job classifications.[2]

In its ruling in the instant case, the Grievance Board made several pertinent findings:

3. "Division of Personnel Administrative Rules and Regulations, Rule 5.6, clearly requires the salary of an employee being demoted to be reduced to at least the maximum rate of the lower salary range, but also gives the employer the discretion to reduce the employee's salary to a lower pay rate within the new range." *McCauley v. Division of Corrections/Division of Personnel,* Docket No. 98–CORR–088 (July 10, 1998).

4. The decrease in pay Grievants received upon demotion did not violate Rule 5.6.

5. "The reorganization is a management decision, and it is assessed by the arbitrary and capricious standard." *See Ball v. Dep't of Transp.,* Docket No. 96–DOH–141 (July 31, 1997).

7. DOH's reorganization was not arbitrary and capricious as Commissioner Van-Kirk articulated legitimate reasons for the action.

8. Grievants' demotions did not violate any statute, rule, regulation, policy, or written agreement.

The circuit court's order held that:

The record reflects that the appellants were given sufficient notice of the reorganization and their resulting demotions to afford each of them due process . . . .

Furthermore, neither the record nor the briefs of the parties reveals that the appellee's actions were contrary to law, rule or policy, or that the decision of the administrative law judge exceeded her statutory authority.

Finally, there is no evidence in the record to support the contention that the decision below was arbitrary, capricious, an

---

2. Prior to being promoted in 1998, appellant Reese worked in a variety of maintenance positions within the DOH. The record is unclear as to what position appellant Reese held immediately prior to his promotion to HDA. Working as an HDA, appellant Reese earned a monthly salary of approximately $5,100.00. After demoting appellant Reese in 2001 to a Transportation Engineering Technician, Senior Position, the DOH set appellant Reese's salary at approximately $3,700.00, the mid-range for his new classification.

Prior to being promoted in 1998, appellant DeVaul worked as a Transportation Service Manager II and earned approximately $3,300.00. Working as a Highway District Administrator ("HDA"), appellant DeVaul earned a monthly salary of approximately $6,000.00 at the time of his demotion. The DOH demoted appellant DeVaul in 2001 back to Transportation Service Manager II, and set appellant DeVaul's salary at the mid-range for the Transportation Service Manager II classification, $3,837.00.

Appellant Marascio was first hired as an ADA on October 1, 1998. At the time of his demotion, appellant Marascio earned a monthly salary of $3,092.00. According to the Grievance Board's decision, appellant Marascio was demoted in 2001 to an Inspector and the DOH set appellant Marascio's salary at $2,300.00.

Prior to being promoted, appellant Markle worked in a variety of maintenance positions within the DOH. The record is unclear as to which position appellant Markle held immediately prior to his promotion to ADA. He was promoted in 1998 to Highway District Assistant Administrator ("ADA") and, at the time of his demotion, appellant Markle earned a monthly salary of $4,997.00. After demoting appellant Markle to a Transportation Engineering Technician position in 2001, the DOH set appellant Markle's salary at $3,149.00.

abuse of discretion, or an unwarranted exercise of discretion. W.Va.Code § 29–6A–7(b).

The appellants ask that this Court overrule the circuit court's order, and order that the appellants be

... restored to their former rates of pay and benefits, that appellants Reese and Antolini are entitled to reverse their retirement, if they so desire, and be restored to their former rates of pay and benefits; that the [appellants] be made whole under *W.Va.Code*, 29–6A–5(b).

## II.

■ In Syllabus Point 1 of *Cahill v. Mercer County Board of Education*, 208 W.Va. 177, 539 S.E.2d 437 (2000), this Court held that:

[g]rievance rulings involve a combination of both deferential and plenary review. Since a reviewing court is obligated to give deference to factual findings rendered by an administrative law judge, a circuit court is not permitted to substitute its judgment for that of the hearing examiner with regard to factual determinations.... Plenary review is conducted as to the conclusions of law and application of law to the facts, which are reviewed *de novo*.

We review the Grievance Board's findings under *W.Va.Code*, 29–6A–7(b) [1998], which states that the Grievance Board's findings will only be overturned if the findings:

(1) [are] contrary to law or a lawfully adopted rule or written policy of the employer;

(2) Exceed the hearing examiner's statutory authority;

(3) [are] the result of fraud or deceit;

(4) [are] clearly wrong in view of the reliable, probative and substantial evidence on the whole record; or

(5) [are] arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

*W.Va.Code*, 29–6A–7(b) [1998].

■ The appellants contend that the appellees failed to provide sufficient notice of the proposed adverse employment actions and thus deprived the appellants of due process of law. "The Due Process Clause, Arti-

cle III, Section 10 of the West Virginia Constitution, requires procedural safeguards against State action which affects a liberty or property interest." Syllabus Point 1, *Waite v. Civil Service Commission*, 161 W.Va. 154, 241 S.E.2d 164 (1977). We affirm the circuit court's conclusion that the appellees provided the appellants with sufficient notice of the adverse employment actions. The notice received by the appellees was repeated, specific, and occurred over a substantial period of time, thus satisfying due process.

■ The appellants next argue that the circuit court erred, as a matter of law, in affirming the Grievance Board's finding that the appellants' reductions in salary were lawful.

Division of Personnel Administrative Rule 5.6 states, in pertinent part, that:

[t]he appointing authority shall reduce the pay of an employee who is demoted and whose current pay rate is above the maximum pay rate for the new classification to at least the maximum pay rate of the new classification or, if the demotion is to a formerly held classification, his or her last pay rate in the formerly held classification, whichever is greater.

Rule 5.6 states that an employee who is demoted to a "new" (for that employee) pay grade classification is entitled "to at least the maximum pay rate of the new classification." A employee who is demoted into a "formerly held" classification is also entitled to the maximum pay rate of the formerly held classification—or his or her former pay rate in the formerly held classification—"whichever is greater." This latter provision apparently would apply only when the maximum pay of a classification has been reduced since the employee held that classification.

As an example: Before being promoted, appellant DeVaul earned approximately $3,300.00 monthly as a Transportation Service Manager II—a position that holds a "seventeen" pay grade classification. In 1998, Appellant DeVaul was promoted to an HDA position, with a "twenty-two" pay grade classification. At the time of his demotion, appellant DeVaul earned a monthly salary of approximately $6,000.00 as an HDA. In August of 2001, the DOH demoted appellant DeVaul back to Transportation Service Man-

ager II, which lowered DeVaul's pay grade classification from "twenty-two" back to "seventeen." The DOH set appellant DeVaul's salary at $3,837.00.

However, according to the DOP's Salary Schedule effective March 1, 2001, the maximum rate for pay grade classification "seventeen" is $4,217.00 a month. Therefore, under Rule 5.6, DeVaul is entitled to the maximum pay rate for the position that is within his former pay grade classification—unless his former pay in that classification was higher than the current maximum—and it is not. DeVaul, it appears, is thus entitled to pay at (approximately) $4,217.00 per month.

The circuit court can apply the principles used in this example to calculate what damages, if any, to which each of the appellants is entitled.

### III.

We affirm the circuit court's order upholding the West Virginia Education and State Employees Grievance Board's decision approving the demotion of the appellants. However, the circuit court erred in affirming the Grievance Board's finding that the appellants' salaries were properly reduced in accordance with Rule 5.6.

Therefore, this case is remanded to the circuit court for a proper calculation of appellants' salaries, in accordance with this opinion.

Affirmed, in Part, and Reversed, in Part.